*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0744**

Joseph Jermaine Henderson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed December 1, 2014
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CR-11-35279

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Kirk, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

On appeal from the postconviction court's denial of his motion to withdraw his guilty plea, appellant argues that the district court (1) impermissibly interjected itself into the plea-negotiation process and (2) erred by accepting appellant's waiver of his right to a probation-revocation hearing without ensuring that he waived his due process rights. We affirm.

## FACTS

In November 2011, respondent State of Minnesota charged appellant Joseph Jermaine Henderson with one count of first-degree aggravated robbery. In January 2012, appellant appeared before the district court and entered a guilty plea to the charge. Appellant waived his jury-trial rights, and he and his counsel reviewed the petition to enter a guilty plea on the record. Appellant testified that he understood that he had not reached a plea agreement with the state and instead was entering a straight plea to the district court. Appellant admitted that although the state offered him 41 months in prison in exchange for a guilty plea to simple robbery, he did not agree to that offer. The district court sentenced appellant to 132 months in prison, but stayed that sentence for three years. The district court also ordered appellant to serve 365 days in the workhouse.

In November 2012, appellant appeared before the district court for a probation-violation hearing based on a new charge. The state offered to dismiss the new charge if he admitted to the probation violation and agreed to have the district court revoke his stayed sentence and impose the 132-month sentence. In response, appellant's counsel

requested that the district court sentence appellant to 114 months if he admitted the probation violation. The district court noted on the record that it had been the sentencing court for appellant's first-degree aggravated robbery charge and, at the time of sentencing, appellant's counsel had asked the court what sentence it would impose. The district court recalled that it had responded "Well, if he wants probation, it's 132 months stayed for three years. One year at the workhouse." The district court noted that appellant asked for time to think about what he wanted to do, and he later entered a guilty plea. As a result, the district court stated that appellant "had a full understanding of what would happen if he came back on a probation violation," and therefore it was "not going to do anything different than 132 months."

After consulting with his counsel, appellant decided to request execution of his stayed sentence. Appellant's counsel questioned appellant as follows:

> [APPELLANT'S COUNSEL]: Is it true that you—we did discuss the fact that you've got the right to a hearing, or actually a jury trial in these cases. Do you understand that?
> [APPELLANT]: Yes.
> [APPELLANT'S COUNSEL]: And you understand that if the [s]tate still wished to pursue the probation violation that they'd have to establish by clear and convincing evidence that you intentionally and otherwise inexcusably violated a term of your—term or condition of your probation; do you understand that?
> [APPELLANT]: Yes.
> [APPELLANT'S COUNSEL]: And you understand that you'd have the right to an allocution hearing or we could argue to the [c]ourt that the [c]ourt should do something other than executing your sentence. Do you understand that?
> [APPELLANT]: Yes.

3

Appellant then agreed that he was demanding execution of his 132-month sentence. The district court accepted appellant's waiver and admissions, revoked his probation, and imposed the 132-month sentence.

In November 2013, appellant filed a petition for postconviction relief. Appellant argued that he should be allowed to withdraw his plea because: (1) the district court impermissively injected itself into the plea negotiations, making his plea invalid; and (2) his waiver of a probation-violation hearing was not knowing, voluntary, and intelligent. The postconviction court denied the petition. This appeal follows.

## DECISION

This court reviews a district court's ultimate decision to deny postconviction relief for an abuse of discretion. *State v. Rhodes*, 675 N.W.2d 323, 326 (Minn. 2004). Generally, the "scope of review is limited to the question of whether sufficient evidence exists to support the postconviction court's findings." *Perkins v. State*, 559 N.W.2d 678, 685 (Minn. 1997). But we review issues of law de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007). Because the validity of a guilty plea is a question of law, we apply de novo review. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

A defendant may withdraw a guilty plea at any time, even after sentencing, if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice occurs when a guilty plea is invalid. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). A guilty plea is valid if it is accurate, voluntary, and intelligent. *Perkins*, 559 N.W.2d at 688. It is the defendant's burden to show that his guilty plea is invalid. *Raleigh*, 778 N.W.2d at 94.

4

**I.    The district court did not impermissibly interject itself into the plea-negotiation process.**

A guilty plea is per se invalid when the district court impermissibly interjects itself into plea negotiations. *State v. Anyanwu*, 681 N.W.2d 411, 414 (Minn. App. 2004). When the district court does so, "it has removed itself from the role of an 'independent examiner' of the plea negotiations and has stepped into the position of 'one of the parties to the negotiation' by becoming 'excessively involved in the negotiations themselves.'" *Id.* at 414-15 (citing *State v. Johnson*, 279 Minn. 209, 216 n.11, 156 N.W.2d 218, 223 n.11 (1968)). But it is not improper for the district court to be involved in a plea negotiation; rather, the district court "has a delicate role in a plea negotiation and necessarily plays a part in any negotiated guilty plea." *Id.* at 415.

In *Anyanwu*, the state charged the defendant with attempted first-degree murder, first-degree assault, and second-degree assault. 681 N.W.2d at 412. At the plea hearing, the state sought the statutory maximum sentence of 240 months. *Id.* The defendant's counsel stated on the record that the defendant would plead guilty to all three counts in a straight plea to the district court, with the understanding that the district court would impose a 210-month sentence. *Id.* The district court stated on the record that it was "agreeing to, if [the defendant] pleads guilty, to give a sentence to the [c]ommissioner of [c]orrections for 210 months." *Id.* (quotation marks omitted). The prosecutor objected to any sentence other than 240 months in prison, and stated "the record should be clear that this is an agreement between the defense and the [c]ourt and that the [s]tate is not a party to it." *Id.* (quotation marks omitted). At the sentencing hearing, the district court imposed a 210-month sentence, and the prosecutor again objected. *Id.*

5

On appeal, this court reversed the defendant's conviction, concluding that "the district court directly and unequivocally promised the defendant a particular sentence in advance, and forced the plea bargain on the prosecutor over the prosecutor's objections." *Id.* at 415. This court noted that, "[b]y doing so, the district court stepped into the position of one of the parties to the negotiation, over the objection of the prosecutor, and abandoned its role as an independent examiner." *Id.*

This case is distinguishable from *Anyanwu*. Here, appellant's counsel specifically questioned appellant on the record about his decision to enter a straight plea to the district court:

> [APPELLANT'S COUNSEL]: Now, you understand that you are entering a straight plea to the judge, so we have not reached a negotiation with the prosecutor, correct?
> [APPELLANT]: Correct.
> [APPELLANT'S COUNSEL]: And you had some other options available to you where the prosecutor was offering that you plead guilty to a simple robbery for 41 months in prison. Do you understand that?
> [APPELLANT]: Yes.
> [APPELLANT'S COUNSEL]: And you decided that you did not want to do that, correct?
> [APPELLANT]: Right.

There is nothing in the transcript of the plea hearing to indicate that the district court made an unequivocal promise to appellant regarding his sentence. In contrast, the district court in *Anyanwu* specifically promised the defendant that it would sentence him to 210 months in prison if he pleaded guilty. 681 N.W.2d at 412.

Appellant argues that the district court's statement at the revocation hearing about what it remembered telling appellant at the plea hearing establishes that the district court made a promise to appellant regarding his sentence. We disagree. The statements on the

6

record at the plea hearing are more relevant than statements at the probation-revocation hearing. And the district court's statements at the probation-revocation hearing about its recollection of appellant's decision to plead guilty almost 11 months earlier do not establish that the district court unequivocally promised that it would impose a particular sentence in exchange for appellant's guilty plea. Viewed in context, the district court was simply recalling to the best of its ability the discussions it had with appellant's counsel and the prosecutor. The district court's statement does not establish that it "removed itself from the role of an independent examiner" by stepping "into the position of one of the parties to the negotiation by becoming excessively involved in the negotiations themselves." *See Anyanwu*, 681 N.W.2d at 414-15 (quotations omitted). Further, unlike the prosecutor in *Anyanwu* who objected to the imposition of the sentence at both the plea hearing and the sentencing hearing, the prosecutor in this case never objected to the district court's imposition of the sentence. *See id.* at 412. Therefore, because the district court in this case did not impermissibly interject itself into the plea negotiations, the postconviction court did not err by denying appellant's motion to withdraw his guilty plea on this basis.

II. **The district court did not err by accepting appellant's waiver of his right to a probation-revocation hearing.**

Appellant argues that his due process rights were violated when the district court failed to obtain a knowing and voluntary waiver of his right to a probation-violation hearing. Although appellant acknowledges that the postconviction court failed to address this issue, he argues that this court should address it because he raised it in his postconviction petition. We agree. Appellant raised the issue to the district court, and

the district court framed the issue in its order consistent with appellant's argument, but it exercised its discretion not to decide the issue.

The United States Supreme Court described the due process requirements for parole- and probation-revocation proceedings in two cases. *See Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S. Ct. 1756, 1760 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972). "At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." *Gagnon*, 411 U.S. at 786, 93 S. Ct. at 1761. Minn. R. Crim. P. 27.04, subd. 2(1)(c), requires the district court to advise the defendant of several rights at his first appearance in a probation-violation proceeding, including his rights to: an attorney; a revocation hearing; disclosure of all evidence supporting revocation; present evidence, subpoena witnesses, call and cross-examine witnesses; present mitigating evidence; and appeal.

Appellant argues that he was not advised of his right to a hearing, to present evidence in his favor, and to confront and cross-examine adverse witnesses. The state concedes that the district court did not ensure that appellant was specifically advised of all of his rights under Minn. R. Crim. P. 27.04, subd. 2(1)(c). But it contends that the district court substantially complied with the rule because appellant received notice of the alleged violation, was represented by counsel, and was advised of many of his rights.

We agree that appellant was not specifically advised on the record of each of his rights under Minn. R. Crim. P. 27.04, subd. 2(1)(c). But because appellant demanded

8

execution of his sentence, which was his right, Minn. R. Crim. P. 27.04, subd. 2(1)(c), did not apply. *See State v. Randolph*, 316 N.W.2d 508, 510 (Minn. 1982). The best practice would have been for the district court to ensure that appellant waived his rights under that rule because he was appearing for a probation-violation hearing, but the district court did not err by failing to do so.

**Affirmed.**